UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MICHAEL L. ITA,                                      CIVIL NO. 08-456 (ADM/JSM)

    Plaintiff,

v.                                                                 <u>ORDER</u>

THE NORTHLAND GROUP, INC.,

    Defendant.

JANIE S. MAYERON, United States Magistrate Judge

The above matter came on before the undersigned upon plaintiff Michael Ita's Motion for Attorneys' Fees and Costs Pursuant to Local Rule 54.3 [Docket No. 10]. Thomas J. Lyons, Esq. and Thomas J. Lyons, Jr., Esq. appeared on behalf of plaintiff. Jeffrey A. Olson, Esq. appeared on behalf of defendant. This motion was decided on the submissions of the parties.

The Court, being duly advised in the premises, upon all of the files, records, and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Attorneys' Fees and Costs Pursuant to Local Rule 54.3 is GRANTED in part and DENIED in part for the reasons set forth in the following Memorandum.

2. On or before July 1, 2009, defendant shall pay the following to plaintiff:

    Lyons, Sr.:   $25,888.74 in attorneys' fees

                   $91.22 in costs

    Total for Lyons, Sr.:     **$25,979.96**

    Lyons, Jr.:  $5,715.91 in attorneys' fees

         $2,224.14 in costs

   Total for Lyons, Jr.:  **$7,940.05**

 **Total: $33,920.01**

Dated:  June 15, 2009

             *s/ Janie S. Mayeron*
             JANIE S. MAYERON
             United States Magistrate Judge

## **MEMORANDUM**

**I. BACKGROUND**

Plaintiff Michael L. Ita filed this action on February 21, 2008, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. On November 6, 2008, a settlement conference was conducted and a settlement between the parties was reached. As part of the settlement, the parties agreed that plaintiff was entitled to an award of attorney's fees and costs, but were unable to reach a resolution regarding the appropriate amount to be paid. Consequently, the parties agreed that the attorney's fees and costs to be awarded to plaintiff should be determined by this Court. Plaintiff's attorneys now have sought an award of $33,120.74 in attorneys' fees and $2,315.36 in costs. Plaintiff Memorandum in Support of Motion, p. 1 ("Pl. Mem.") [Docket No. 11]. Defendant objected to these amounts and has requested that the Court reduce the fees awarded to plaintiff to an amount commensurate with the nature of the litigation, the number of hours that should have been reasonably expended on the

type of work done, and the appropriate personnel that should have undertaken the various tasks. Defendant's Opposition Memorandum, p. 20 ("Def. Mem.") [Docket No. 15].

## II. DISCUSSION

### A. Legal Standard

The FDCPA provides for an award to a successful litigant of "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Both parties agree that the lodestar method described in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) is the applicable standard to be used to determine the fees and costs to be awarded to plaintiff. See Pl. Mem., p. 5; Def. Mem., p. 2. "Under the lodestar method, the Court determines 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Young v. Diversified Consultants, Inc., 554 F.Supp.2d 954, 956 (D.Minn. 2008) (J. Davis) (quoting Hensley, 461 U.S. at 433). Additionally, "[a]ssessing the reasonableness of a fee requires [the Court] to consider the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity." Jenkins v. Missouri, 127 F.3d 709, 718 (8th Cir. 1997). A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated. Emery v. Hunt, 272 F.3d 1042, 1048 (8th Cir. 2001); McDonald v. Armentrout, 860 F.2d 1456, 1458-59 (8th Cir. 1988) ("Requested rates should be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891

(1984). The fee applicant bears the burden to produce evidence to support the rates charged and hours worked. Hensley, 461 U.S. at 433.

**B.     Reasonable Hourly Rate**

In his motion, plaintiff requested the following hourly rates: $325 for Thomas Lyons, Sr., $300 for Thomas Lyons, Jr., and an hourly rate for paralegal Andrea Weber, in the amount of $110 per hour.[1] Pl. Mem., p. 12; Lyons Jr. Aff. ¶ 4. Defendant did not object to these rates; instead it submitted that the billing rates requested are only tenable if plaintiffs' counsel are held to the standard of "FDCPA litigation expert." Def. Mem, p. 10

In cases recently decided in this District, the rates proposed by plaintiff for both Lyons, Sr. and Lyons, Jr. have been found reasonable. For example, in Young, 554 F.Supp.2d at 957, Bankey v. Phillips & Burns, LLC, 2008 WL 2405773 (D.Minn. June 11, 2008) (J. Frank) and Olson v. Messerli & Kramer, P.A., 2008 WL 1699605 (D.Minn. Apr. 9, 2008) (J. Schiltz), the court found the rate of $300 per hour for Lyons, Jr., and the rate of $325 per hour for Lyons, Sr. to be reasonable. Further, based on this Court's knowledge of and experience with the prevailing rates in this market, rates of $325 and $300 per hour for Lyons, Sr., and Lyons, Jr. are comparable to the rates of other attorneys in this community with similar knowledge and practice experience. See Warnock v. Archer, 397 F.3d 1024, 1027 (8th Cir. 2005) ("when fixing hourly rates, courts may draw on their own experience and knowledge of prevailing market rates"). Accordingly, this Court concludes that a rate of $300 per hour is reasonable for Lyons,

---

[1]     According to Lyons Jr., Weber has in excess of twelve years of paralegal experience. Lyons Jr. Aff. ¶ 4.

4

Jr., a rate of $325 per hour is reasonable for Lyons, Sr., and the rate of $110 per hour for paralegal Weber is reasonable.

### C. Reasonably Expended Hours

Next, the Court examines the number of hours expended by each lawyer to determine if they are reasonable in light of the outcome; the necessity and usefulness of the services provided; and the efficiency with which the plaintiff's attorneys conducted that activity in light of their expertise. See Young, 554 F.Supp.2d at 957 ("The Court agrees that the Lyons' expertise should enable them to efficiently litigate FDCPA claims and it keeps this expertise in mind when determining the number of hours reasonably expended."). In performing this calculation, the Court must exclude "excessive, redundant, or otherwise unnecessary" hours. Hensley, 461 U.S. at 434.

Plaintiff seeks an award of fees for the following hours expended on his matter: Lyons, Sr. spent 82.67 hours in this matter and incurred $27,133.13 in fees (Lyons, Sr. Aff., ¶ 6); Lyons, Jr. spent 12.83 hours in this matter and incurred $3,847.84 in fees (Lyons, Jr. Aff., ¶ 6); and paralegal Weber spent 19.46 hours in this matter, incurring $2,139.77 in fees (Lyons, Jr. Aff., ¶ 6).

In opposition, defendant characterized this case as "simple and routine", and one that could have been avoided altogether if plaintiff had just been forthright with defendant when he was initially contacted about his delinquent account. Def. Mem., pp. 2-3. Additionally, defendant contended that the number of hours claimed by Lyons, Sr. and Lyons, Jr. was not reasonable, arguing that there was no motion practice or litigation involved in this case, minimal communication between opposing counsel, only eight docket entries in the case, and minimal discovery taken – one round of written

discovery and four depositions taken by the parties. Def. Mem., pp. 4, 11, 12. Further, while the case ultimately settled at the settlement conference, defendant submitted that the case could have been resolved prior to the settlement conference (and presumably with less attorney time expended) had plaintiff's attorneys presented a demand for settlement at the initiation of the suit, expressed a willingness to engage in settlement discussions or provided supporting documentation for their fees prior to the settlement conference. Id., pp. 5-6, 10. Finally, defendant specifically objected to the attorneys' time expended with regard to the investigation and preparation of the Complaint, the post-Complaint investigation, depositions, administrative tasks, medical issues, preparation of the fee petition, the use of co-lead counsel, and the lack of proportionality between the actual money recovered and the time spent by counsel to achieve the results obtained.[2] Id., pp. 12-20.

Before examining the specific objections of defendant and the outcome of its own examination of the hours and services provided by plaintiffs' counsel, the Court first addresses defendant's more general objections. Defendant's suggestion that the fees expended on behalf of plaintiff should be reduced because he could have responded differently when first contacted by defendant or settlement discussions could have and should have been pursued earlier are without merit. As defendant well knows there are many ways to avoid disputes or to resolve them. Simply because one person may have responded in a different manner than plaintiff to defendant's contacts regarding an outstanding debt or may have approached the timing of settlement discussions differently than plaintiff, does not mean that defendant's "way" is the only approach to

---

[2] The Court notes that defendant did not object to the time expended by paralegal Weber.

6

resolution. There is nothing in the record before this Court to suggest that plaintiff's or his attorneys' conduct was unreasonable or vexatious such that his fee petition should be reduced purely for those reasons. Similarly, the fact that there no motions were brought (which of course would explain the few docket entries), little communication between counsel for the parties, and what defendant would characterize as limited discovery is neither here nor there. This Court does not base its evaluation on what was <u>not</u> done – the question before this Court is in light of what was pursued and achieved for plaintiff on this matter, whether the services provided by counsel were necessary, useful and efficiently performed in light of the expertise they brought to the matter. That said, the Court now turns to defendant's specific objections.

### 1. Investigation and Preparation of the Complaint

Defendant argued that experts at FDCPA litigation such as Lyons, Sr. and Lyons, Jr. should not need to take over 17 hours (14.58 hours spent by Lyons, Sr. and 2.52 hours spent by Lyons Jr.) to draft a routine boilerplate FDCPA complaint, and that much of the work could have been performed by the their paralegal. Def. Mem., pp. 12-14.

Plaintiff filed a 7-page, 30-paragraph Complaint. [Docket No. 1]. While it is true that the paragraphs 23-30 and the "Wherefore" clause could be viewed as "boilerplate" language that plaintiffs' attorney may have used in the past,[3] the bulk of the Complaint (<u>i.e.</u> paragraphs 3-21) was very fact-specific as to plaintiff, and could only have been created following a thorough and complete investigation and analysis of the case by plaintiffs' counsel. As the court observed in <u>Young</u>, "[a]lthough the Complaint was

---

[3] Defendant submitted no other Complaints to support its contention that plaintiff's Complaint was "the same boilerplate Complaint used over and over again, with a few factual blanks plugged in. . ." Def. Mem., p. 13.

derived from a form and was not lengthy, preparing the Complaint also entailed analysis of the facts and legal basis for the case and litigation strategy." 554 F. Supp.2d at 957.

Having reviewed the entries by Lyons, Sr. and Lyons, Jr. from January 3, 2008 through February 5, 2008, the Court finds that the time and services spent by each attorney in connection with the pre-Complaint investigation and preparation of the Complaint were reasonable and not duplicative, with exception of the entry by Lyons, Sr. dated January 22, 2008 for .65 hours ($211.43). The Court rejects this entry because it is too vague and insufficiently detailed for the Court to evaluate if the time expended was reasonably necessary, redundant, or excessive. See Bores v. Domino's Pizza LLC, Civ. No. 05-2498 (RHK/JSM), 2008 WL 4755834 at *6 (D.Minn. Oct. 27, 2008) (citing Miller v. Woodharbor Molding & Millworks, Inc., 174 F.3d 948, 950 (8th Cir. 1999)). Therefore, the Court will reduce plaintiff's petition for fees by $211.43.

### 2. Post-Complaint Investigation

Defendant points out that Lyons, Sr. spent another 3.05 hours after filing the Complaint on further fact investigation and three affidavits,[4] which range from 6 to 15 sentences long. Def. Mem., p. 14. According to defendant, these were simple tasks and could have been performed by a paralegal. Id.

The Court disagrees. It is expected that attorneys will continue to investigate and develop the facts that bear on their client's case even after it is commenced. Further, while one lawyer may assign a paralegal to interview witnesses, carry out fact investigations or prepare affidavits, other attorneys may believe that they are better

---

[4] Defendant did not share with the Court which entries by Lyons, Sr. it found objectionable.

suited to perform such services so that they can make the necessary judgments about the credibility of the witnesses they are interviewing and the value of the facts obtained from these witnesses to their client's case.  Additionally, the fact that the ultimate result of a witness interview is a short affidavit does not lead to the conclusion that the time spent interviewing the witness and preparing the affidavit was not time well spent.  In sum, having reviewed the time entries by Lyons, Sr. that related to post-Complaint investigation, the Court finds they were reasonable.

### 3. Depositions

Lyons, Sr. took three depositions of employees of defendant; all three depositions were completed within five hours, and according to defendant, all used the same outline, material and exhibits.  See Olson Aff., Ex. H (first and last deposition transcript pages); Def. Mem., p. 15.  On this basis, defendant maintained that Lyons, Sr.'s expenditure of 7.22 hours preparing for these three depositions was excessive and should be reduced, considering Lyons, Sr.'s expert status and the fact that the amount of documents produced up until that point was insubstantial.  Def. Mem., p. 15.

In light of the nature and complexity of the case, including the claims and defenses asserted by the parties, the Court finds that 7.22 hours in deposition preparation time for defendant's three employees was reasonable.

### 4. Administrative Tasks

Defendant contended that Lyons, Sr. spent 2.71 hours on April 28, May 1 and September 5, 2008, at the rate of $325 per hour, gathering emails, sending the Answer to plaintiff, and scanning, reviewing and downloading recordings to a computer, all of

9

which defendant characterized as administrative tasks that could have been performed by an assistant or paralegal.  Def. Mem., p. 15.

Defendant's description of these three entries is only partially accurate.  On April 28, 2008, Lyons, Sr.'s records indicated that he expended .54 hours ($174.42) sending defendant's Answer to plaintiff for plaintiff's response, and checking with his staff about the "rule 25f" and discovery status.  See Lyons, Sr. Aff., Ex. 2.  On May 1, 2008, Lyons, Sr. stated that in .48 hours ($156.00), he gathered all the emails on plaintiff's responses to defendant's arguments on the facts and explained the defenses to plaintiff.  Id.  On September 5, 2008, Lyons, Sr. spent 1.69 hours ($549.25) receiving, scanning in, downloading and reviewing plaintiff's documents and voice recording from defendant.[5]  Id.

The Court agrees with defendant that several of these services (e.g. sending Answer to plaintiff, checking with staff on status of case, receiving, scanning and downloading documents or a recording) are clerical or ministerial in nature, could easily have been performed by clerical staff, and are not compensable.  See Shrader v. OMC Aluminum Boat Group, Inc., 128 F.3d 1218, 1222 (8th Cir. 1997).  On the other hand, those services which require an attorney's expertise and judgment are appropriate for reimbursement on a fee petition (e.g. reviewing or explaining materials to client that bear on a client's case).  Therefore, of the hours spent by Lyons, Sr. on April 28, May 1 and September 5, 2008, the Court will reduce the 2.71 hours for these entries by 1.41 hours ($458.25) to 1.3 hours ($422.25)

---

[5]   The September 5, 2008 entry also makes reference to the "rule 26a1 from Northland," but does not indicate any services performed in connection with this pleading.

### 5. Medical Issues

Defendant claims that the 2.25 hours Lyons, Sr. reported for research regarding medical authorizations and explaining Rule 35 to plaintiff was unnecessary and unreasonable given Lyons, Sr.'s knowledge as of the initial conference with the Court that no medical records existed to support plaintiff's claim of emotional distress. Olson Aff., ¶ 3; Def. Mem, p. 15.

Again, defendant did not state which entries by Lyons, Sr. were objectionable. The only entries the Court could discern from the records submitted by Lyons, Sr. that even mention medical issues or Rule 35 and add up to 2.25 hours are dated September 8 (.37 hours),[6] 17 (.30),[7] 18 (1.21 hours),[8] and 19 (.37 hours).[9] Lyons, Sr. Aff., Ex. 2. As an initial matter, the Court notes that the services described in these three entries are not confined to Rule 35. However, to the extent that these entries make reference to medical issues, they do not state that Lyon's, Sr. was researching the need for medical authorizations as argued by defendant. Instead, for the most part, they describe research with respect to Fed. R. Civ. P. 35, which governs those circumstances in which a party is entitled to an independent medical examination of his

---

[6] "Fact Investigation – response to the discovery from Northland; email the answers to JAO on the medical questions." Lyons, Sr. Aff., Ex. 2.

[7] "Discovery – the medical issues and addresses for witnesses for def counsel; monitor staff on amending the ROG answers." Lyons, Sr. Aff., Ex. 2.

[8] "Damage elements – going over #6 and the med auths that will surely follow; addresses of witnesses; legal research on FRCP 35; recent cases." Lyons, Sr. Aff., Ex. 2.

[9] "Discovery – medical issue discusses as for a damage claim; Explain Rule 35." Lyons, Sr. Aff., Ex. 2.

or her opponent, and issues bearing on the examiner's report. Given that plaintiff had made a claim for damages for emotional distress, it is not surprising that his counsel was looking into and explaining the application of Rule 35 to plaintiff. Having reviewed these entries, the Court finds that not only are defendant's descriptions of the entries incomplete and inaccurate, but the services and time expended on these dates are reasonable.

### 6. Preparation of the Fee Petition

Defendant challenged the time expended by plaintiff in preparing the fee petition[10] arguing that the fee petition and its attachments are no different than other fee petitions filed by the Lyons office, and that some of the time sought included detailing of time slips that is administrative in nature and not recoverable. Def. Mem., pp. 16-17.

A review of the billing records submitted by Lyons, Sr. indicates that on November 7, 10, 12, 14 and 17, 2008 he expended 8.31 hours in total on the fee petition. See Lyons Aff., Ex. 2. A review of the billing records submitted by Lyons, Jr. indicates that on November 7 and 14, 2008 paralegal Weber spent 3.2 hours on the fee petition. See Lyons, Jr. Aff., Ex. 2.

Plaintiff's counsel submitted a fifteen-page brief and two voluminous supporting affidavits in support of the fee petition. Defendant would like this Court to conclude that the brief is by-and-large nothing more than "a compilation of string cites, standards of review, and other quotations from cases that have surely been used before by Lyons'

---

[10] Defendant pointed out that plaintiff's memorandum stated that 3.02 hours were expended on preparing, researching and drafting the fee petition, when in fact a total of 13.83 hours are actually set forth in the billing records relating to the fee petition, including 4.20 hours billed by paralegal Weber at Lyons, Jr.'s office. Def. Mem., pp. 16-17.

12

office." Def. Mem., p. 16. Indeed, although defendant submitted no other fee petitions to support this contention, even assuming that Lyons, Sr. would have drawn on his expertise and prior work product in drafting this submission, does not lead this Court to find that the hours spent by Lyons, Sr. and paralegal Weber were excessive. Instead, the fee petition set out the services and hours raised by this case, and appropriately analyzed and applied the governing law to the issues presented to the instant case. Assuming that Lyons, Sr. did use his prior fee petitions in the preparation of the instant fee petition, the Court concludes that he appropriately tailored that prior work product to the fee petition in this case, and that the 8.31 hours spent by Lyons, Sr. and paralegal Weber 3.2 hours on the fee petition were fully appropriate and reasonable.

### 7. Co-Lead Counsel

Defendant contended that in light of the simplicity of the case and Lyons, Sr.'s expertise in FDCPA litigation, the involvement of a second FDCPA litigator (Lyons, Jr.) was unnecessary. Def. Mem., p. 17. Accordingly, defendant requested that the fees claimed by Lyons, Jr. be discounted in their entirety, or alternatively, that the work performed by that office be billed at the hourly paralegal rate. Def. Mem., p. 17.

The fact that there were two attorneys working on the file, even if one attorney had sufficient experience or expertise to handle the case, is of no moment. Law firms often have more than one attorney, who presumably has experience and expertise, work on a matter. Likewise it is not uncommon for a lawyer from one firm to associate with a lawyer from another firm. The question is not whether it was appropriate to have two lawyers work on this case – the relevant inquiry is whether there was duplication of

efforts, or as stated previously, "excessive, redundant, or otherwise unnecessary" hours. Hensley, 461 U.S. at 434.

Of the 32.29 hours expended by the Consumer Justice Center, Lyons, Jr. only expended 12.83 hours on this matter; the balance of the hours were incurred by paralegal Weber. Lyons, Jr. Aff., Ex. 2. This Court has reviewed the entries by Lyons, Jr. and finds that with the exception of the entries dated September 4, 2008 (.74 hours) and November 5, 2008 (.69), the hours expended by Lyons, Jr. were reasonable, necessary and not duplicative. However, as to the September 4, and November 5, 2008 entries, the Court finds that the services performed on these days could have been carried out by a paralegal, and thus will only permit an award of fees for these hours at $110 per hour.

In summary, the Court reduces the fees for Lyons, Jr. by $271.70.

**D.     Miscellaneous Entries**

Before the Court addresses defendant's final argument of proportionality, the Court concludes that Lyons, Sr.'s fees should be reduced for the services reflected in the following entries because they are too vague and insufficiently detailed for the Court to evaluate if the time expended was reasonably necessary, redundant, or excessive.

June 12, 2008 -- .88 hours ($286.27)

September 12, 2008 -- .33 hours ($107.61)

October 27, 2008 -- .02 hours ($5.87)

November 10, 2008 -- .54 ($174.96)

**E.     Proportionality**

Finally, defendant maintains that proportionality of the fees requested by plaintiff's counsel to the amount of damages recovered by plaintiff should be considered by the Court in this case.  Def. Mem., p. 18.  Here, plaintiff received $11,000 in damages and the Court is entertaining an award in excess of $31,000 in fees.

Plaintiff anticipated defendant's position regarding proportionality and preemptively argued that proportionality should not be a factor at all because the amount of attorneys' fees awarded is not required to be proportionate to the amount of damages.  Pl. Mem., p. 12.  Plaintiff further submitted that he had to defend against defendant's affirmative defense, which triggered an award of boomerang attorneys' fees for defendant.  Id.

Although there may be circumstances where the proportionality of the fees sought to the result obtained should be considered and result in a reduction in fees, as a general rule that is not the case in FDCPA cases.  The purpose of the fee-shifting provision of the FDCPA is to allow individuals to obtain competent counsel, and to consider proportionality in awarding attorneys' fees would undermine that objective.  See Armstrong, 2002 WL 31050583 at *5 ("The FDCPA contains a fee shifting statute to ensure that meritorious parties such as Plaintiff can attract competent legal representation."); see also Rivera v. Corporate Receivables, Inc., 540 F.Supp.2d 329, 343 (D.Conn. 2008) ("reducing a fee request simply because it is disproportionate to a damage award runs contrary to the policies underlying the FDCPA and overestimates the extent to which an individual litigant can control the expenses of a lawsuit."); Cope v. Duggins, 203 F.Supp.2d 650, 656 (E.D.La. 2002) ("the Fifth Circuit has rejected a rule

15

of proportionality between the fee awarded and the damages recovered in determining the amount of the award of attorney fees."); Baruch v. Healthcare Receivable Management, Inc., 2007 WL 3232090 at *6 (E.D.N.Y. Oct. 30, 2007) (Rejecting strict proportionality and stating that "[s]ince recoveries under FDCPA are typically small…due to the limitation on statutory damages provided in 15 U.S.C. § 1692k, a proportionate fee award would often be insufficient to attract competent counsel.").

Here, the Court finds that an award of $31,604.65 in fees is reasonably proportional, despite the fact that they exceed the damages paid to plaintiff in the amount of $11,000 by nearly three times.  Further, this determination is consistent with several cases in this district where the fees awarded to Lyons, Sr. and Jr. greatly exceeded the damages awarded to the plaintiff.  See e.g. Bankey, 2008 WL 2405773 at *6 (awarding $33,630.40 in fees on a judgment of $2,500); Olson, 2008 WL 1699605 at *5 (awarding $36,795.79 in fees on a judgment of $1,001); Armstrong, 2002 WL 31050583 at *1 (awarding $43,180.00 in fees on a judgment of $1,000).  For all of these reasons, the Court rejects defendant's proportionality argument.

**E.    Costs**

Lyons, Sr. stated that the firm incurred a total of $91.22 in non-reimbursed expenses in connection with this litigation in the form of travel, parking and mileage. Lyons, Sr. Aff., ¶ 8.  Lyons, Jr. stated that his firm incurred a total of $2,224.14 in non-reimbursed expenses, including $350 for the court filing fee, $79.80 for photocopy charges, $7.29 for postage charges, and $1,787.05 to APS Financial for service of process and for three depositions.  Lyons, Jr. Aff., ¶ 8.  Defendant did not object to

these costs, and the Court finds that they are reasonable and should be awarded to plaintiff.

### III.     CONCLUSION

In summary, taking into account the reduction in hours billed as discussed above, the Court concludes that plaintiff is entitled to attorneys' fees and costs in the amount of $33,920.01 as follows:

| | | |
|---|---|---|
| Lyons, Sr.: | $25,888.74 in attorneys' fees | |
| | $91.22 in costs | |
| Total: | **$25,979.96** | |
| | | |
| Lyons, Jr.: | $5,715.91 in attorneys' fees | |
| | $2,224.14 in costs | |
| Total: | **$7,940.05** | |

J.S.M.